District Court
District of Connecticut
FILED AT NEW HAVEN

July 8                    20 24

By    S. Santos
         Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH CELLULAR DEVICE ASSIGNED CALL NUMBER 475-301-5012 | Case No.  3:24-mj-590 (MEG)<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT AND ORDER PURSUANT TO 18 U.S.C §§ 3122 AND 3123

I, Alex Rivera, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with **475-301-5012** ("**the TARGET TELEPHONE**"), with no listed subscriber that is in the custody or control of Verizon Wireless, a wireless communications service provider that is headquartered 180 Washington Valley Road, Bedminster, NJ, 07921. As a provider of wireless communications service, Verizon Wireless is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.     The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require Verizon Wireless to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127.  The

requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

4.      I am a New Haven Police Officer and am assigned as a Task Force Officer with the Federal Bureau of Investigation and have been a Police Officer since January of 2016. I am currently assigned to the New Haven Division of the FBI, where I have been tasked with investigating violent criminal street gangs and organized criminal enterprises involving the smuggling, distribution, and sale of illegal drugs. As a police officer, I investigated numerous crimes, including drug dealing/distribution and firearms-related offenses. In connection with these investigations, I have coordinated controlled purchases of illegal drugs utilizing cooperating sources; conducted electronic and physical surveillance of individuals involved in organized criminal activity; analyzed records documenting the purchase and sale of illegal drugs and other items; and debriefed cooperating sources and drug distributors, as well as other local, state and federal law enforcement officers, regarding the manner and means employed by organized criminal enterprises.

5.      Based on my training and experience, I know that narcotics traffickers often use cellular telephones and often speak to one another using coded, cryptic or slang words and phrases, in the belief that, by doing so, they can thwart the efforts of law enforcement to identify them and their activities and to seize their drugs and/or assets. I know that drug traffickers frequently have access to multiple cellular telephones or that they use other means of communication from their primary devices such as Facebook, Facetime, Snapchat, WhatsApp and other messaging applications, that they know it makes it more difficult for law enforcement to intercept those communications. I also know that narcotics traffickers and distributors frequently use cellular telephones subscribed to by other persons and prepaid cellular telephones that require the

2

purchaser to provide little or no identifying information to purchase, activate, and utilize, all of which is done in an effort to avoid detection and thwart the efforts of law enforcement.

6.    The facts in this affidavit come from my own personal knowledge from participating in this investigation and my training and experience, and from information obtained by me from other law enforcement personnel. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrants and does not set forth all of my knowledge about this matter. It sets forth only those facts necessary to support the requested authorization.

7.    Based upon information I know as a result of my participation in this investigation, as well as information which I have determined to be accurate and reliable, provided to me by other sources, I am familiar with the information discussed herein.  Where the contents of documents, or communications with others, are reported herein, they are set forth in substance and part, unless otherwise indicated.

8.    The statements contained in this affidavit are based, in part, on information obtained through: (a) physical surveillance; (b) other law enforcement officers and their reports; (c) Confidential Source information; (d) my experience and training. The facts in this affidavit come from information learned from special agents and task force officers of the FBI, law enforcement personnel, and information received from a cooperating witness and a source of information.  This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth everything I know regarding this investigation.

9.    Probable cause exists to believe that the receipt of the requested information will constitute or lead to evidence of violations of 21 U.S.C. § 841(a)(1) (distribution of narcotics and possession with intent to distribute narcotics), 21 U.S.C. § 843(b)(use of a telephone to facilitate a

narcotics felony), and 21 U.S.C. § 846 (conspiracy to possess with intent to distribute narcotics (collectively, the "TARGET OFFENSES"), as well as the identification of people who are engaged in the commission of these offenses.  For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed by Luis RODRIGUEZ, also known as "Plum," "P", and/or "Minnie" and others who have yet to be identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of the TARGET OFFENSES and will lead to the identification of individuals who are engaged in the commission of these offenses.

10.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

11.     An investigation is being conducted by the New Haven Safe Streets and Gang Task Force.  Investigators began conducting controlled buys of narcotics through the use of a confidential source ("CS-1").[1]

12.     Based on the investigation to date, I believe that RODRIGUEZ is distributing cocaine, heroin, and fentanyl with several other individuals. RODRIGUEZ utilizes two separate cellular devices for street-level drug sales, to include the **TARGET TELEPHONE,** as detailed below.

---

[1] CS-1 has proven to be credible and reliable having provided valuable information that was corroborated.CS-1 has prior convictions for larceny, escape, burglary, trespass, impersonation, harassment, witness tampering and failure to appear. CS-1 is cooperating for monetary compensation.

**CONTROLLED BUY WEEK ENDING IN JUNE 29, 2024**

13.     During the week ending in June 29, 2024, at the direction of, and under the supervision of investigators, CS-1 purchased four (4) Ziploc bags containing approximately 2.5 grams of fentanyl from RODRIGUEZ.

14.     At the direction of investigators, CS-1 agreed to arrange the purchase of fentanyl from RODRIGUEZ via the **TARGET TELEPHONE.** During the phone call, RODRIGUEZ was on the phone speaking with CS-1 discussing a pre-determined location to conduct the sale. RODRIGUEZ directed CS-1 to Walmart in New Haven.

15.     Investigators observed CS-1 arrive and park at the agreed-upon meeting location and shortly after a black Lexus ES350 bearing Connecticut registration BM-52380, herein referred to as Target Vehicle-1, being operated by RODRIGUEZ park near CS-1. Shortly after CS-1 drove away from the area of Target Vehicle-1.

16.     Target Vehicle-1 is registered to Juan Fontanez (DOB xx/xx/1998) of 160 Cedar Hill Avenue, 2ndfloor, New Haven, Connecticut. According to a New Haven Police Department's report on April 17, 2023, Juan Fontanez is RODRIGUEZ's brother.

17.     After the transaction, CS-1 was met by investigators at a predetermined location and debriefed. CS-1 stated RODRIGUEZ would be meeting them at Walmart in New Haven. CS-1 stated RODRIGUEZ arrived in a black Lexus (Target Vehicle-1) and was the sole occupant of the vehicle.

18.     CS-1 provided investigators with the purchased narcotic which field tested positive for the presence fentanyl and had a gross weight of 2.5 grams. Confirmatory lab analysis is pending. Investigators have reviewed the audio and video recording of the meeting between CS-1 and RODRIGUEZ and it is consistent with CS-1's report.

**CONTROLLED BUY WEEK ENDING IN JULY 6, 2024**

19.    During the week ending in July 6, 2024, at the direction of, and under the supervision of investigators, CS-1 purchased four (4) Ziploc bags containing approximately grams of fentanyl from Alexis and Cheyenne KONZE who were directed by RODRIGUEZ.

20.    At the direction of investigators, CS-1 agreed to arrange the purchase of fentanyl from RODRIGUEZ via the **TARGET TELEPHONE.** During the phone call, RODRIGUEZ was on the phone speaking with CS-1 discussing a pre-determined location to conduct the sale. RODRIGUEZ directed CS-1 to Walmart in New Haven and informed CS-1 that "She" would be meeting him/her at the Walmart.

21.    Investigators conducting surveillance of the controlled buy location observed CS-1 arrive and park at the agreed-upon meeting location and shortly after a white Acura TLX bearing Connecticut registration BL-58678, herein referred to as Target Vehicle-2, which has been previously observed being used by RODRIGUEZ, arrive in the agreed-upon location. Investigators later learned that Target Vehicle-2 was being operated by Alexis KONZE and passenger as Cheyenne KONZE.   Investigators observed Target Vehicle-2 park near CS-1. Investigators observed CS-1 speak with them briefly and walk away.

22.    Target Vehicle-2 is registered to Alisa RODRIGUEZ (DOB xx/xx/2002) of 160 Cedar Hill Avenue, New Haven, Connecticut. According to a New Haven Police Department report on September 3, 2023, Alisa RODRIGUEZ is RODRIGUEZ's sister.

23.    After the transaction, CS-1 was met by investigators at a predetermined location and debriefed. CS-1 stated RODRIGUEZ instructed him over the phone that "She" would be meeting him/her at Walmart in New Haven. CS-1 described the females as two heavy set females

6

one with red hair in her mid 20's and the other with light brown hair in her early 20's. Investigators later identified the females that RODRIGUEZ directed CS-1 to meet with, and who sold CS-1 the narcotics, as Alexis KONZE and Cheyenne KONZE, through a review of social media and DMV photos. When shown the DMV photos, CS-1 confirmed that Alexis KONZE and Cheyenne KONZE were the two individuals he met with. In addition, investigators conducting surveillance on a subsequent date observed Target Vehicle-2 parked at the residence of Alexis KONZE and Cheyenne KONZE.

24.     CS-1 provided investigators with the purchased narcotic which field tested positive for the presence fentanyl and had a gross weight of 2.5 grams. Confirmatory lab analysis is pending. Investigators have reviewed the audio and video recording of the meeting between CS-1 and RODRIGUEZ along with Alexis and Cheyenne KONZE, and it is consistent with CS-1's report.

### Background Regarding Telephones and Location Information

25.     Obtaining precise location information for the **TARGET TELEPHONE** will assist investigators in identifying where RODRIGUEZ is meeting co-conspirators, where he may have other stash houses and where he may be going to resupply. Investigators have been able to do a significant amount with source reporting, other agency reporting, toll analysis, social media analysis, and physical surveillances; however, investigators are missing an extensive amount of RODRIGUEZ's activities. Investigators know RODRIGUEZ to travel around with different drug substances, to include fentanyl, based on source reporting and audio and video recording used during the controlled purchases.

26.     Based upon my training and experience, I know that persons who traffic in illegal narcotics often facilitate their criminal activity by use of wireless telephones. Drug traffickers

routinely keep their wireless phones on their person so they can stay in frequent communication with their associates, especially when a drug transaction has been planned, is being planned, or is imminent. I have made arrests of drug traffickers and it is very common that wireless telephones are seized from the trafficker's person. Having the cell phone on their person allows the meet location to be changed very quickly or set at the last moment, which is often a counter-surveillance ploy. In addition, having the cell phone(s) on their person allows them to conduct business more efficiently and while on the move even when they visit stash locations or sources of supply.

27.     In my training and experience, I have learned that Verizon Wireless is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

28.     I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service through E-911 Phase II data, also known as GPS data or latitude-longitude data, and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the

device's signal using data from several of the provider's cell towers. Accordingly, cell-site data provides an approximate general location of the cellular device but is typically less precise than other types of location information, such as E-911 Phase II data or GPS data.

29.     Based on my training and experience, I know that Verizon Wireless can collect cell-site data on a prospective basis about the **TARGET TELEPHONE**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

30.     Based on my training and experience, I know that Verizon Wireless also can collect per-call measurement data, which Verizon Wireless also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

31.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

32.    Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET TELEPHONE**'s user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

33.  . Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the **TARGET TELEPHONE**, without geographic limit, for a period of thirty days pursuant to 18 U.S.C. § 3123(c)(1).

34.    I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Verizon's network, and at such intervals and times as directed by the government. The government will compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

**35.**    Because the warrant will be served on Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

36.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **September 1, 2024**, which will be approximately 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any

11

wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

37.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.    These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.    Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully Submitted,

ALEX RIVERA    Digitally signed by ALEX RIVERA
Date: 2024.07.08 11:43:50 -04'00'

Alex Rivera
Task Force Officer
Federal Bureau of Investigation

The truth of the foregoing affidavit has been attested to me by FBI Task Force Officer Alex Rivera by telephone on this ____ day of July 2024 in New Haven, Connecticut.

HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

Records and information associated with the cellular telephone assigned call number 475-301-5012 (hereafter "the **Target Telephone**"), with an unknown subscriber, that is in the custody or control of Verizon Wireless (the "Service Provider"), a wireless communications service provider that is headquartered in Bedminster, New Jersey.

1

**ATTACHMENT B**
**Particular Things to be Seized**

I.    **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the account listed in Attachment A **for the time period June 3, 2024, through the present, AND for the period extending 30 days from the date this warrant is issued:**

    a.    The following information about the customers or subscribers of the account:

        i.    Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

1

    b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the account, including:

        i.  the date and time of the communication, the method of the communication, and the source and destination of the communication;

        ii.  Call detail records to include numbers dialed, incoming numbers, call durations, signaling and communications processing information, geographic locations of towers and sectors activated, sent and received the account, for any form of communication it is capable of including: voice, VoIP, VoLTE, text, SMS, MMS, internet, mobile-to- mobile, any push to talk feature, non-billed calls, uncharged call detail, airtime usage data, Automated Message Accounting records and data bases, calls-to-destination data and packet data, as available without communications content and excluding post-cut-through dialed digits; and

        iii.  Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as all available per-call measurement data (PCMD), Timing Advance Information, Timing Advance Report Date, and True Call data.

    c.  All precise location information, including E-911 Phase II data, GPS data, and Latitude-longitude data.

In approving this warrant, the Court finds reasonable necessity for the seizure of the location information set forth above. *See* 18 U.S.C. § 3103a(b)(2). This warrant does not authorize the seizure of any tangible property or the contents of any communications.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (distribution of narcotics and possession with intent to distribute narcotics), 21 U.S.C. § 843(b) (use of a telephone to facilitate a narcotics felony), and 21 U.S.C. § 846 (conspiracy to possess with intent to distribute narcotics) involving the individuals named in the affidavit and others yet to be identified during the thirty day period from the date of the warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by Verizon Wireless, and my title is

_____. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state

that the records attached hereto are true duplicates of the original records in the custody of Verizon

Wireless. The attached records consist of _____

**[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with knowledge

of those matters, they were kept in the ordinary course of the regularly conducted business activity

of Verizon Wireless, and they were made by Verizon Wireless as a regular practice; and

b.     such records were generated by Verizon's electronic process or system that

produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of Verizon Wireless in a manner to ensure that they are true duplicates of the

original records; and

2.     the process or system is regularly verified by Verizon Wireless, and at all

times pertinent to the records certified here the process and system functioned properly and

normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                    Signature